2024 WI App 44

**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 23, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No. 2023AP218-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CF4376

**IN COURT OF APPEALS
DISTRICT I**

---

IN THE INTEREST OF JAYDEN ADAMS, A PERSON UNDER THE AGE OF 17:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JAYDEN ADAMS,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

¶1 GEENEN, J. Jayden Adams, a juvenile defendant under adult criminal court jurisdiction, appeals from the nonfinal order of the circuit court denying his motion for discovery prior to his WIS. STAT. § 970.032(1) (2021-22)

preliminary examination and his motion for reverse waiver to juvenile court.[1] Adams argues that he was entitled to discovery before his § 970.032(1) preliminary examination in order to negate the first-degree reckless homicide charge, which granted the adult criminal court exclusive original jurisdiction over his case. Adams further argues that the circuit court erroneously exercised its discretion when it denied Adams's reverse waiver motion.

¶2      We conclude that under *State v. Kleser*, 2010 WI 88, 328 Wis. 2d 42, 786 N.W.2d 144, juvenile defendants are entitled to all evidence that the State intends to introduce at the WIS. STAT. § 970.032(1) preliminary examination to establish probable cause of the alleged jurisdictional offense. The State is required to produce this evidence at a reasonable time before the preliminary examination. Moreover, additional materials exclusively in the possession of the State may be discoverable provided that the juvenile defendant establishes a particularized need for the materials requested by showing that they are likely to be relevant to negate one of the elements of the alleged jurisdictional offense.

¶3      Although we determine that juvenile defendants have a limited right to discovery before a WIS. STAT. § 970.032(1) preliminary examination under *Kleser*, we conclude that Adams was not entitled to the discovery requested in this

---

[1] This court granted leave to appeal the order. WIS. STAT. RULE 809.50(3). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

"'Reverse waiver' refers to the procedure by which an adult court transfers a case against a juvenile offender to juvenile court." *State v. Toliver*, 2014 WI 85, ¶18 n.7, 356 Wis. 2d 642, 851 N.W.2d 251.

The Honorable Audrey Skwierawski presided over Adams's motion for discovery and his preliminary hearing. The Honorable Laura Gramling Perez presided over the reverse waiver hearing. We refer to both as the circuit court.

case. We further conclude that the court did not erroneously exercise its discretion in denying Adams's reverse waiver motion. Accordingly, we affirm.

## BACKGROUND

¶4 The criminal complaint against Adams alleges that on October 14, 2021, thirteen-year-old Adams and several friends broke into a car in a hotel parking lot with the intention of stealing it. The victim, Sunita Balogun-Olayiwola, saw Adams and his friends breaking into the car and confronted them. The children stole some things from the car and fled on foot, and Balogun-Olayiwola notified a security guard at the hotel of the break-in. Balogun-Olayiwola got into her SUV, drove up to the kids, got out of her vehicle, and confronted them again. One of the kids told Adams to take the SUV, and then someone punched Balogun-Olayiwola in the face. Adams got into the driver's seat of Balogun-Olayiwola's SUV, and when she tried to hold onto the door, Adams kicked the door into her face. According to an eyewitness, Adams reversed the SUV and ran over Balogun-Olayiwola's head. He then drove forward over her body, reversed over her head a second time, shifted to drive, and dragged her forward. Balogun-Olayiwola died of her injuries.

¶5 The complaint further alleges that Adams drove himself and his friends to Walmart in Balogun-Olayiwola's SUV and used her credit card to buy merchandise. He and his friends eventually abandoned the SUV and were apprehended near where they left it. Among other crimes, Adams was charged with first-degree reckless homicide as a party to a crime. Because of this charge and Adams's age at the time of the alleged offense, the adult criminal court had exclusive original jurisdiction of the case. WIS. STAT. § 938.183(1)(am).

¶6 Adams requested a preliminary examination under WIS. STAT. § 970.032(1) and moved for discovery prior to the hearing. Adams sought "police reports, body worn camera and squad camera audio-visual recordings, surveillance video, photographs, audio-visual recordings of statements made by witnesses, alleged co-actors, and the child defendant, and Milwaukee County Medical Examiner reports." Pointing to *Kleser*, Adams argued he was entitled to this discovery because he has "the right to attempt to negate [the first-degree reckless homicide charge] during the preliminary examination" in order to "possibly deprive the criminal court of its 'exclusive original jurisdiction.'" Adams argued that he and counsel "cannot possibly know all potential defenses or relevant information if they are not provided with the information within the possession of the State."

¶7 On November 17, 2021, the circuit court issued an oral ruling denying Adams's discovery motion. The circuit court subsequently held a multi-day preliminary examination at which police detective Ryan Cepican testified consistent with the allegations in the criminal complaint. The circuit court considered the testimony and determined that there was probable cause that Adams had committed first-degree reckless homicide as a party to a crime.

¶8 The circuit court held a multi-day reverse waiver hearing under WIS. STAT. § 970.032(2). Adams called six witnesses, who testified about, among other things, correctional programs and treatment options available to juvenile offenders, like Adams, depending on whether they are prosecuted through the adult criminal or juvenile justice systems. The relevant hearing testimony is discussed below.

¶9 Dr. Antoinette Kavanaugh, a board-certified forensic psychologist who completed a forensic evaluation of Adams, testified that Adams suffered from anxiety and depression and had a history of struggling to regulate his emotions. She stated that Adams needed cognitive behavioral therapy and potentially psychotropic medications to treat these issues. Dr. Kavanaugh testified that children in the juvenile court system benefit from greater access to services and from being around peers of a similar age, and she believed that Adams would likely remain at the Lincoln Hills juvenile correctional facility until he turned eighteen even if he remained in the adult court system.

¶10 Alisha Kraus, director of the office of program services for the Department of Corrections (DOC), testified that there is limited access to treatment programs in adult prisons, that many inmates remain on lengthy waitlists for programs, and that inmates often times do not receive access to programs until they approach their release dates. Kraus testified about the Racine Youthful Offender Correctional (RYOC) facility, explaining that it is a medium-security prison primarily composed of inmates between the ages of eighteen and twenty-four that offers programs including, but not limited to, cognitive behavioral therapy and anger management. Kraus stated that most of the RYOC inmates are there for violent offenses and that DOC tries to put as many of the eighteen to twenty-four-year-old offenders in RYOC as possible. According to Kraus, it is "possible" for a child serving an adult sentence at Lincoln Hills to transfer to RYOC upon turning eighteen, but she declined to offer an opinion on the likelihood that Adams or a similarly-situated child would transfer to RYOC upon turning eighteen.

¶11 Sheila Corroo, director of treatment programs for Lincoln Hills, testified that upon entering Lincoln Hills, children undergo an observation and

assessment period to identify their treatment needs. She testified that dialectical behavioral therapy (DBT), a type of cognitive behavioral therapy, is the primary treatment program offered at Lincoln Hills, and children placed at Lincoln Hills begin DBT immediately, continuing the treatment throughout their stay at the facility. Although Corroo testified that children placed at Lincoln Hills under adult criminal court orders do not undergo the observation and assessment period, these children still receive the same services at Lincoln Hills as do the children placed there under juvenile delinquency orders, including DBT.

¶12 Timothy Kubiszewski, field supervisor for the DOC's Division of Juvenile Corrections, testified about supervision and continuing treatment for juveniles placed in the Serious Juvenile Offender Program. Melanie Fleischmann, a services coordinator for Wraparound Milwaukee, testified that Wraparound provides services to address the mental health needs of children released from Lincoln Hills, and that these children remain eligible for services until they turn nineteen. Finally, Sharonda Stewart, Adams's maternal aunt, testified regarding Adams's life before his arrest and her perception of his mindset during his time in secure detention.

¶13 After considering the record and the arguments from the parties, the circuit court denied Adams's motion for reverse waiver and retained jurisdiction. The court discussed the legal standard for reverse waiver and the facts of Adams's case, and it concluded that Adams failed to meet his burden to show that, if convicted, he could not receive adequate treatment in the criminal justice system and that reverse waiver would not depreciate the seriousness of the offense.

¶14 Adams now appeals from the circuit court's order denying his discovery and reverse waiver motions.

## DISCUSSION

### I.    Jurisdiction

¶15    As a threshold matter, the State argues that we lack jurisdiction over Adams's discovery claim because the order denying the motion was not reduced to writing.  The State argues that the only written order from which Adams appeals is the circuit court's order retaining jurisdiction after the conclusion of the reverse waiver hearing.  Therefore, the State contends that the circuit court's oral ruling denying Adams's discovery motion is outside the scope of Adams's petition to appeal a nonfinal order (i.e., the written order denying Adams's motion for reverse waiver and retaining jurisdiction).  *See* WIS. STAT. §§ 807.11, 809.50(1); *State v. Wolverton*, 193 Wis. 2d 234, 258-60, 533 N.W.2d 167 (1995) *abrogated on other grounds by State v. Dubose*, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582; *State v. Powell*, 70 Wis. 2d 220, 221-23, 234 N.W.2d 345 (1975).  We disagree.

¶16    In cases such as this, where a juvenile is charged with a crime that subjects them to the original jurisdiction of the adult court system and requests a transfer of jurisdiction to juvenile court, the preliminary examination functions as the first part of a two-part process that concludes with the "reverse waiver" hearing.[2]  WIS. STAT. § 970.032(1)-(2).  When juveniles charged with an original jurisdiction crime request a preliminary examination under § 970.032(1), as

---

[2] The second part of this two-part process is colloquially referred to as the "reverse waiver" hearing, but in fact, both subsections of WIS. STAT. § 970.032 constitute the reverse waiver proceeding (i.e., the adult criminal court's decision whether to retain jurisdiction or transfer the case to juvenile court).  *State v. Kleser*, 2010 WI 88, ¶1, 328 Wis. 2d 42, 786 N.W.2d 144.

Adams did here, they are invoking § 970.032 as a whole, because both of these hearings are necessary components of the statutory scheme governing whether the adult criminal court can or must retain its jurisdiction over the juvenile.[3]  A circuit court's written order to retain jurisdiction after § 970.032 proceedings necessarily encompasses the issues raised at the preliminary examination because a circuit court cannot deny the juvenile's motion and retain jurisdiction without proceeding under both subsections.

¶17     Here, the circuit court's oral denial of Adams's discovery motion is within our jurisdiction to consider because Adams's appeal from the written order denying his motion for reverse waiver under WIS. STAT. § 970.032 encompasses the denial of his discovery motion prior to his preliminary examination.  Adams expressly petitioned for leave to appeal the discovery issue, the State did not develop any procedural or substantive argument with respect to our review of the issue, and we ultimately granted Adams's petition.  Accordingly, we conclude that we have jurisdiction to hear Adams's appeal from the denial of his discovery motion.

## II.     *Kleser* and WIS. STAT. § 970.032(1) Preliminary Examinations

¶18     Relying on ***Kleser***, Adams argues that he was entitled to the discovery materials he requested prior to his WIS. STAT. § 970.032(1) preliminary examination.  Discovery orders are ordinarily reviewed for an

---

[3] We note that the circuit court and the parties acted in conformance with this interpretation of the statute.  At the first opportunity, Adams requested a preliminary hearing under WIS. STAT. § 970.032(1).  After the circuit court made the finding of probable cause, it simply moved on to "the second part of the reverse waiver proceeding" under § 970.032(2) without any separate motion or request from Adams to proceed to the reverse waiver hearing and with no objection from the State that such a hearing had not been requested.

erroneous exercise of discretion, but the interpretation and application of statutes and case law present questions of law, which we review independently. *Sands v. Whitnall Sch. Dist.*, 2008 WI 89, ¶14, 312 Wis. 2d 1, 754 N.W.2d 439; *Lane v. Sharp Packaging Sys., Inc.*, 2002 WI 28, ¶19, 251 Wis. 2d 68, 640 N.W.2d 788; *Estate of Torres ex rel. Torres v. Morales*, 2008 WI App 113, ¶4, 313 Wis. 2d 371, 756 N.W.2d 662.

¶19     Although the juvenile defendant in *Kleser* waived his preliminary examination under WIS. STAT. § 970.032(1), the *Kleser* court went into detail about the difference between a preliminary examination under § 970.032(1) and a preliminary examination under WIS. STAT. § 970.03. *Kleser*, 328 Wis. 2d 42, ¶¶53-66. It explained that in contrast to § 970.03(1) preliminary examinations, where the court must find probable cause that "*some* felony has been committed by the defendant[,]" § 970.032(1) preliminary examinations require the court to find probable cause that the juvenile has committed "'*the* violation' of which he or she is accused in the criminal complaint." *Kleser*, 328 Wis. 2d 42, ¶¶55-57. The different language reflects a significant difference in purpose because "[t]his finding is required not only to protect the juvenile from hasty, improvident, or malicious prosecution, but also to assure that the criminal court has 'exclusive original jurisdiction' of the juvenile by virtue of the juvenile's probable violation of one of the [enumerated offenses]." *Id.*, ¶57. The *Kleser* court recognized that

> if the court *must* find probable cause for the specific offense charged in the complaint, the defendant has a strong incentive and should have the right to attempt to negate that specific offense during the preliminary examination—to prevent the [S]tate from prevailing on the specific offense charged, or possibly, to deprive the criminal court of its "exclusive original jurisdiction."

*Id.*, ¶60. Thus, in § 970.032(1) preliminary examinations, "the defendant *must* be given some latitude in attacking the specific offense charged if a successful attack would alter the crime charged or negate the exclusive original jurisdiction of the criminal court." *Kleser*, 328 Wis. 2d 42, ¶65.

¶20 The issue is how much "latitude" is afforded to the juvenile defendant to attack the crime charged. The State argues that neither *Kleser* nor any statute grants Adams a right to discovery prior to the preliminary examination. We understand the State's argument to be that a juvenile defendant would never be entitled to discovery prior to the preliminary examination, even discovery in the exclusive possession of the State that bears upon the probability that the juvenile defendant committed an original jurisdiction offense. Adams advocates a broad reading of *Kleser* to include an unqualified right to discovery prior to the preliminary examination, arguing that it is impossible for defendants to know all potential challenges to probable cause without access to discovery.

¶21 The *Kleser* court did not explicitly mention a right to discovery prior to a WIS. STAT. § 970.032(1) preliminary examination, but it did repeatedly emphasize the importance of the juvenile defendant's right to present evidence to negate or reduce the original jurisdiction charge, and it explained that the § 970.032(1) preliminary examination is the *only* opportunity during reverse waiver proceedings for presenting such evidence. *Kleser*, 328 Wis. 2d 42, ¶¶62, 84. That is, such evidence cannot be offered during the reverse waiver hearing under § 970.032(2). Although "the juvenile must be given reasonable latitude to offer admissible evidence for the purpose of meeting his [or her] burden to prove the three elements for reverse waiver under [§] 970.032(2)[,]" this latitude is limited to "additional factual evidence to put 'the offense' in context so that the court can make an informed judgment on whether transferring the matter

to juvenile court would 'depreciate the seriousness of the offense.'" *Kleser*, 328 Wis. 2d 42, ¶84. "[T]he juvenile may not offer evidence for the purpose of contradicting the offense charged [during the reverse waiver hearing] because that offense has already been established in the preliminary examination." *Id.*

¶22 Given *Kleser*'s interpretation of the statutory scheme and the fact that WIS. STAT. § 970.032(1) preliminary examinations uniquely test the exclusive original jurisdiction of the adult criminal court over the juvenile defendant, we cannot agree with the State's assertion that juvenile defendants are never entitled to discovery prior to a § 970.032(1) preliminary examination. To the contrary, in light of this unique legal framework, we conclude that defendants are entitled to evidence that the State intends to introduce at the § 970.032(1) preliminary examination to establish probable cause of the alleged jurisdictional offense. The State is required to produce this evidence at a reasonable time before the preliminary examination itself because this evidence is necessary for the right established in *Kleser* to be meaningful. Moreover, we conclude that circumstances may be such that other materials exclusively in the possession of the State may be discoverable by the defendant prior to a § 970.032(1) preliminary examination, provided he or she establishes a particularized need for the materials requested by showing that they are likely to be relevant to negate one of the elements of the charged jurisdictional offense.

¶23 We observe that the landscape of admissible evidence at preliminary examinations post-*Kleser*, including WIS. STAT. § 970.032(1) preliminary examinations, changed with the passage of 2011 Wis. Act 285, which created WIS. STAT. § 970.038. Section 970.038 states that "hearsay is admissible in a preliminary examination," and that a court may base its probable cause finding "in whole or in part on hearsay[.]" Hearsay was generally not admissible in

11

preliminary examinations when *Kleser* was decided, so juveniles in § 970.032(1) preliminary examinations could challenge probable cause through cross-examination of first-hand witnesses. Now, however, it is often sufficient for the State, as it did here, to call a single witness who testifies consistent with police reports and allegations in the complaint based on multiple levels of hearsay. Defendants still retain the statutory right to cross-examine witnesses during the preliminary examination, WIS. STAT. § 970.03(5), but this right is nullified when the witness's testimony is based entirely on hearsay that may not be admissible under a statutory exception to the general rule against hearsay, and the defendant lacks any ability to obtain discovery exclusively in the possession of the State.

¶24 We further observe that we are "not free to disregard language of the supreme court," *Zarder v. Humana Insurance Co.*, 2010 WI 35, ¶56, 324 Wis. 2d 325, 782 N.W.2d 682 (citation omitted), and the use of the words "some latitude" in *Kleser*, 328 Wis. 2d 42, ¶65, implies that juvenile defendants are uniquely entitled to *something* which adult defendants are not. To conclude otherwise would deprive the phrase of meaning because if juvenile defendants are *not* entitled to anything in addition to what is afforded to an adult defendant, they have received no more "latitude" than they would have had if they were an adult and there was no jurisdictional issue at all.

¶25 It is well established that a preliminary examination is a "critical stage" of a criminal prosecution. *State v. O'Brien*, 2014 WI 54, ¶40, 354 Wis. 2d 753, 850 N.W.2d 8. A preliminary examination under WIS. STAT. § 970.032(1) is even more critical because of its unique jurisdictional function, and as such, a juvenile defendant must have the ability to challenge multilevel hearsay testimony supporting the jurisdictional charge. The plain language used in *Kleser* paired with probable cause findings that can be based entirely on hearsay demand that

12

juvenile defendants have a meaningful "right to attempt to negate that specific [jurisdictional] offense during the preliminary examination—to prevent the [S]tate from prevailing on the specific offense charged, or possibly, to deprive the criminal court of its 'exclusive original jurisdiction.'" *Kleser*, 328 Wis. 2d 42, ¶60.

¶26 However, *Kleser* recognized and we are mindful that "the legislature did not intend the reverse waiver hearing to be a minitrial[,]" and it stands to reason that the legislature also did not intend the WIS. STAT. § 970.032(1) preliminary examination to be a minitrial. *See Kleser*, 328 Wis. 2d 42, ¶69. While § 970.032(1) serves an important and unique jurisdictional purpose that § 970.03(1) does not, § 970.032(1) preliminary examinations are still preliminary examinations, and defendants lack the ability to file discovery motions in felony actions prior to the preliminary examination. WIS. STAT. § 971.31(5)(b). "[S]tatutory discovery is designed to assure fairness at a criminal trial," and "[a] preliminary examination is not a trial." *State v. Schaefer*, 2008 WI 25, ¶¶23-24, 308 Wis. 2d 279, 746 N.W.2d 457. "[T]he preliminary examination is 'intended to be a summary proceeding to determine essential or basic facts as to probability.'" *Id.*, ¶34 (citation omitted).

¶27 In his discovery motion, Adams requested "police reports, body worn camera and squad camera audio-visual recordings, surveillance video, photographs, audio-visual recordings of statements made by witnesses, alleged co-actors, and the child defendant, and Milwaukee County Medical Examiner reports." A review of the evidence presented at the preliminary examination shows that none of the requested materials were introduced by the State. And, critically, Adams does not make any specific representation with respect to how any of the requested materials would have been likely to negate the first-degree

reckless homicide charge. Instead, Adams argues generally that he is entitled to the requested discovery because he and counsel "cannot possibly know all potential defenses or relevant information if they are not provided with the information within the possession of the State."

¶28    Adams's argument, if accepted, would turn WIS. STAT. § 970.032(1) preliminary examinations into minitrials on original jurisdiction charges. Reliance on the unknown nature of the content of the requested materials, standing alone, is insufficient to entitle a juvenile defendant to additional discovery prior to a § 970.032(1) preliminary examination. At the motion hearing, the State argued, in part, that Adams had not shown any "particularized need" for the requested materials. We take that argument to mean that Adams did not show that the materials requested were likely to be relevant to negate one of the elements of the charged jurisdictional offense, and we agree. *See* ***O'Brien***, 354 Wis. 2d 753, ¶¶38-39 (concluding at the preliminary examination stage that counsel's proffer as to what the subpoenaed witness would testify about was insufficient to establish relevancy). Because Adams failed to explain a particularized need for the discovery he requested despite having the opportunity to do so, we affirm the circuit court's denial of Adams's motion for discovery.[4]

---

[4] We observe, as did the State and the circuit court, that there exist alternative, "less formal information-gathering techniques" available to the defendant. *See* ***State v. Schaefer***, 2008 WI 25, ¶¶30, 35, 308 Wis. 2d 279, 746 N.W.2d 457. Adams argues that because he was only thirteen years old at the time of his preliminary examination, he had a "limited ability to provide pertinent factual information to his counsel." However, every defendant in a WIS. STAT. § 970.032(1) preliminary examination is a juvenile, and while a juvenile defendant's inability to aid in their defense because of his or her age may be a relevant consideration, Adams makes no specific allegations as to how his ability to provide pertinent factual information to his counsel was actually limited other than a general appeal to his age.

### III. Reverse Waiver

¶29 Adams argues that the circuit court erroneously exercised its discretion by denying his motion for reverse waiver and retaining jurisdiction. "A decision to retain or transfer jurisdiction in a reverse waiver situation is a discretionary decision for the [circuit] court." *State v. Dominic E.W.*, 218 Wis. 2d 52, 56, 579 N.W.2d 282 (Ct. App. 1998). We "will affirm a discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Kleser*, 328 Wis. 2d 42, ¶37. We are required to "look for reasons to sustain" a discretionary decision. *State v. Verhagen*, 198 Wis. 2d 177, 191, 542 N.W.2d 189 (Ct. App. 1995).

¶30 WISCONSIN STAT. § 970.032(2) provides that the court shall retain adult criminal court jurisdiction unless the juvenile proves by a preponderance of the evidence all of the following:

> (a) That, if convicted, the juvenile could not receive adequate treatment in the criminal justice system.
>
> (b) That transferring jurisdiction to the court assigned to exercise jurisdiction under ... [ch.] 938 would not depreciate the seriousness of the offense.
>
> (c) That retaining jurisdiction is not necessary to deter the juvenile or other juveniles from committing the violation of which the juvenile is accused ....

*See also* *Kleser*, 328 Wis. 2d 42, ¶¶51, 67-68. The circuit court concluded that Adams failed to meet his burden to show the first two factors: (1) that, if convicted, he could not receive adequate treatment in the criminal justice system, and (2) that reverse waiver would not depreciate the seriousness of the offense.

15

¶31     As to the first factor, Adams argues that the circuit court erroneously determined that there was a likelihood that Adams would transfer to RYOC upon turning eighteen years old.  The court stated:

> I think that there is substantial evidence on the record that there is, at least, a very good chance that [Adams] would be moved to RYOC after his time at Lincoln Hills, and so would be in a facility that focuses on his—people his age—maturing youth—and working with a staff that is certainly accustomed to, and perhaps, specifically trained to, work with a population that is approximately [Adams's] age.  It is certainly not guaranteed that [Adams] would be placed at RYOC, but the evidence before me indicates that there's a very good chance of it.

¶32     Adams says that Kraus, the director of program services for DOC, was the only witness to testify with respect to RYOC, and she testified only that it was "possible" for a child serving an adult sentence at Lincoln Hills to transfer to RYOC upon turning eighteen.  When asked about the likelihood that Adams or a similarly situated child would transfer to RYOC, Kraus did not offer an opinion.

¶33     Adams misinterprets the circuit court's reasoning.  The circuit court heard evidence that even if Adams remained under the jurisdiction of the adult criminal court, he would remain at Lincoln Hills until he turned eighteen years old, and while there, he would receive the same services at Lincoln Hills as do the children placed there under juvenile delinquency orders, including DBT to treat his mental health issues.  As to RYOC, the court heard evidence that DOC tries to place as many eighteen to twenty-four-year-old offenders at RYOC as possible, that a majority of the inmates at RYOC were there for violent offenses, and that RYOC offers the types of programs that were recommended by Dr. Kavanaugh to address Adams's mental health issues.  The circuit court also heard evidence that Adams's progress and conduct during the four years he would spend at Lincoln

16

Hills would be considered in determining where to transfer him when he turned eighteen. Based on this evidence, it was reasonable for the circuit court to conclude that there was a "very good chance," though "certainly not guaranteed" that Adams would be transferred to RYOC upon turning eighteen and that Adams failed to demonstrate that he could not receive adequate treatment in the criminal justice system.

¶34 As to the second factor, Adams takes issue with the circuit court's observation that the victim's family was present during court proceedings. Adams argues that whether the victim's family is present is an irrelevant criterion for determining whether reverse waiver would depreciate the seriousness of the charged offense and "implie[d] that a victim with no family is somehow less entitled to having a case prosecuted in adult court."

¶35 We disagree with Adams's argument and reject his implication. When the circuit court noted the presence of the victim's family members in determining whether reverse waiver would depreciate the seriousness of the offense, it did so in order to underscore how the "ongoing trauma and tragedy for the victim's family" directly supported the extreme seriousness of the offense. Acknowledging the continuing effects of "an incredibly tragic incident" on a homicide victim's family by observing that they have been "very present throughout [the] proceedings" is not an improper consideration when evaluating whether reverse waiver would depreciate the seriousness of the offense.

¶36 Accordingly, we conclude that the circuit court did not erroneously exercise its discretion in denying Adams's reverse waiver motion.

17

**CONCLUSION**

¶37 We conclude that juvenile defendants are entitled to all evidence that the State intends to introduce at the WIS. STAT. § 970.032(1) preliminary examination to establish probable cause of the alleged jurisdictional offense. The State is required to produce this evidence at a reasonable time before the preliminary examination. Moreover, additional materials exclusively in the possession of the State may be discoverable, provided that the juvenile defendant establishes a particularized need for the materials requested by showing that they are likely to be relevant to negate one of the elements of the charged jurisdictional offense. Here, the State did not introduce any of the discovery materials requested by Adams, and Adams did not show a particularized need for them despite having the opportunity to do so.

¶38 We affirm the circuit court's denial of Adams's discovery motion, and it did not erroneously exercise its discretion by denying Adams's reverse waiver motion and retaining jurisdiction.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.